NEW JERSEY RUBBER COMPANY, DEFENDANT IN ERROR, v. COMMERCIAL UNION ASSURANCE COMPANY (LIMITED) OF LONDON, PLAINTIFF IN ERROR.

Argued March 26, 1900—Decided June 18, 1900.

1. In a policy of fire insurance covering several items of property, a clause which permits only " concurrent insurance " is not infringed by other insurance that covers only some of said items, provided such other insurance is effected on terms which require it to bear proportionally with the primary insurance whatever loss occurs within the range of their common operation.

2. An insurance company, about to issue a policy of fire insurance to the amount of $25,000, distributed in specified sums among several items of property, stipulated with the assured that its policy should be concurrent and proportionate with other insurance to be obtained by the assured to the amount of $75,000, and in reliance on that stipulation sent its policy to the assured.  *Held*—

   1. That other insurance, covering only some of the items of property, and not distributed among the items in the same proportion as was the insurance under the policy, did not comply with the stipulation.

   2. That until the assured obtained other insurance according to the stipulation he had no right to accept the policy, or, if he did accept it, the acceptance was equivalent to an affirmative representation that he then had the other insurance required, and such representation being false to his knowledge and material to the contract of the company, the company was not bound.

3. After an insurance company had delivered its policy under the circumstances above mentioned, and a loss had occurred, the company became fully aware that the assured had not complied with the stipulation stated, and thereafter canceled the policy in accordance with its terms, paying back the unearned premium, but retaining so much of the premium as would have been earned by valid insurance from the date of the policy until the time of cancellation.  *Held*—

1. That the company thereby affirmed the validity of the contract, and could not, in an action thereon, successfully deny the same.

2. That these facts could be lawfully proved on behalf of the plaintiff, upon the issue raised by a declaration setting forth the policy and a plea of non-*assumpsit.*

On error to the Supreme Court. For opinion of the Supreme Court, see *ante p.* 51.

For the plaintiff in error, *Sherrerd Depue.*

For the defendant in error, *John Rellstab.*

The opinion of the court was delivered by

DIXON, J. The plaintiff brought suit in the Hunterdon Circuit on a policy of insurance against fire issued by the defendant, and there recovered a judgment, which was affirmed on error in the Supreme Court and is now here for final review.

Two defences were interposed, one resting on the terms of the policy, the other resting on an agreement made before the policy was issued.

The policy was issued August 1st, 1897, and according to its terms insured the plaintiff against loss by fire happening during the succeeding year to a building, the machinery in that building and in another building, and the stock in four buildings, making in all seven items, to each of which a specified sum was allotted. The policy provided that the insuring company should not be liable for a greater proportion of any loss on the described property than the amount thereby insured should bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property. Another provision was to the effect that the entire policy, unless otherwise provided by agreement endorsed thereon or added thereto, should be void, if the insured then had or thereafter should procure any other contract of insurance, valid or not, on property covered in whole or in part by the policy ; but a *rider* was annexed stating that other concurrent insurance was permitted without notice until requested.

The plaintiff's evidence at the trial showed that on the day of the date of this policy the plaintiff had procured several other policies similar to this one, but covering only some of the items embraced in this policy.   Thereupon the defendant contended that the express permission of " concurrent insurance " was applicable only in case the other insurance covered all the items in the defendant's policy, and consequently the defendant's obligation was avoided by breach of the provision against other insurance than such as was expressly allowed. On this ground a nonsuit was prayed, but refused, and an exception sealed.

We think the permission attached to the policy was not so narrow as the defendant claims.   Concurrent insurance is that which to any extent insures the same interest against the same casualty, at the same time as the primary insurance, on such terms that the insurers would bear proportionally the loss happening within the provisions of both policies.   It is this last quality—of sharing proportionally in the loss— that distinguishes concurrent insurance from mere double insurance.

The *permission* of concurrent insurance, in contrast with a requirement thereof, gives the insured an option as to the time when he will procure other insurance, the length of its duration and the property it shall cover, provided it shall proportionally aid the primary insurer in bearing whatever loss may occur within the range of their common operation.

As the other insurance effected by the plaintiff was of this nature, it came within the express permission of the defendant's policy, and therefore the motion to nonsuit was properly denied.

The second defence is of more substantial character.

The uncontradicted evidence showed that in the negotiations for insurance by the defendant it was agreed between the plaintiff and defendant that the latter should issue its policy to the amount of $25,000, distributed among the several items of property, and that the plaintiff should procure

from other insurers policies on the same property to the amount of $75,000 at least, which should be concurrent and proportionate with the policy of the defendant. The true intent of this agreement was that, simultaneously with the complete execution of the defendant's contract, the plaintiff would procure other insurance, of such a character as would limit the defendant's responsibility on its policy to one-fourth of the loss happening to any item of the property insured. The distinction between a requirement and a permission of concurrent insurance is here clearly presented. It turns, not upon any variation in the meaning of the words "concurrent insurance," but upon the absence of any option in the insured with respect to the scope and duration of the insurance. Concurrent insurance required by an insurer must, where there is no qualifying provision, run with the primary insurance for all the time and over all the objects covered by the latter. In the present case the insurance required was to be not only concurrent but for a definite amount and proportionate—that is, the amount was to be distributed among the various items of property insured, in the same proportion as was the amount of the defendant's policy.

This agreement was not carried out by the plaintiff, and the defendant contends that, therefore, its policy did not become operative.

Subject to a matter presently to be considered, we think this contention is well founded. In order to render the policy of the defendant fully operative, delivery by the defendant and acceptance by the plaintiff were necessary, and the legal effect of the agreement mentioned was to preclude the plaintiff from accepting the policy unless it held, at the same time, such other insurance as was contemplated. Such a stipulation did not vary or add to the terms of the written policy. It merely prevented that document from becoming a contract between the parties until the stipulation was complied with or abrogated. Thus, Mr. Justice Stephen, in stating the rule as to the conclusiveness of written agreements, says that there may, nevertheless, be proved " the existence of any separate

oral agreement, constituting a condition precedent to the attaching of any obligation under such contract." *Steph. Dig. Ev.*, art. 90. The cases of *Davis* v. *Jones*, 17 *C. B.* 625; *Pym* v. *Campbell*, 6 *El. & B.* 370, and *Wallis* v. *Littell*, 11 *C. B.* (*N. S.*) 369, support this doctrine. With respect to writings not under seal, they liken the delivery by one party to the other on such a condition precedent to the delivery of a deed to a third person in escrow, and in Pym *v.* Campbell, Mr. Justice Crompton said : "I know of no rule of law to estop parties from showing that a paper purporting to be a signed agreement was in fact signed   *   *   *   on the terms that it should not be an agreement till money was paid or something else. done." To the same effect is the language of Mr. Justice Folger, expressing the opinion of the New York Court of Appeals, in *Benton* v. *Martin*, 52 *N. Y.* 570, 574 : "Instruments not under seal may be delivered to one to whom, upon their face, they are made payable, or who, by their terms, is entitled to some interest or benefit under them, upon conditions the observance of which is essential to their validity."

Since, in the present case, the plaintiff did not comply with the stipulation, which was to be fully performed by it on acceptance of the defendant's policy, it could not and did not lawfully accept that policy while the stipulation remained in force.

The same result may be reached by a somewhat different course of reasoning.

In the law of insurance, representations are of two classes—affirmative and promissory. " The former are those which affirm the existence of a particular state of things at the time the contract of insurance is made and becomes operative. The latter are those which are made by the assured concerning what is to happen during the term of the insurance, stated as matters of expectation, or, it may be, of contract. The one is an affirmation of a fact existing when the contract begins ; the other is a promise to be performed after the contract has come into existence." *May Ins.*, § 182. Although

an affirmative representation be made during the progress of negotiations, yet if it relates to the condition of things on which the insurer is to become bound, "the law regards it as made the instant the contract is entered into." *Id.,* § 190. Speaking of these affirmative representations, Mr. Justice Gray, in *Kimball* v. *Ætna Insurance Co.,* 9 *Allen* 540, 542, said: "If the representations are positive and not of mere opinion or belief, it matters not whether they are made at or before. the time of the execution of the policy, nor whether they are expressed in the present or the future tense, if they relate to what the state of facts is or will be when the policy is executed and the risk of the underwriter begins. If the facts are then materially different from the representations, the whole foundation of the contract fails, the risk does not attach, the policy never becomes a contract between the parties. * * * Falsehood in such representations is not shown to vary or add to the contract, or to terminate a contract which has once been made, but to show that no contract has ever existed."

The law is entirely settled that if an affirmative representation, made with a view of obtaining insurance, is erroneous to the knowledge of the party making it in a respect material to the risk, the policy issued on the strength of it is not obligatory.

In the present case the plaintiff, while negotiating with the defendant for insurance, stipulated that when it accepted the defendant's policy for $25,000, other concurrent and proportionate insurance to the amount of $75,000 should be in its possession, and by accepting the policy (if it can be deemed to have accepted it) the plaintiff in effect declared that the stipulation had been fulfilled. Thus, at the instant of contracting, the plaintiff made an affirmative representation that the concurrent and proportionate insurance contemplated was in existence. This representation was material to the risk which the defendant intended to assume, and in reliance upon it the defendant contracted. As it was false to the plaintiff's knowledge, the defendant was not bound. .

586     COURT OF ERRORS AND APPEALS.

N. J. Rubber Co. v. Com. Union Assur. Co.     *64 N. J. L.*

But the defendant's subsequent conduct does away with this defence.

The terms of the policy covered the year from August 1st, 1897, to August 1st, 1898. The fire occurred October 21st, 1897, and on the following day the defendant's agent examined all the policies held by the plaintiff, and became fully aware of the fact that they did not comply with the stipulation. This matter was thereafter made the subject of negotiation and correspondence between the plaintiff and the defendant. On November 20th, 1897, the defendant gave the plaintiff five days' notice of its desire to cancel the policy, in conformity with the terms of that instrument, and accordingly canceled the policy and paid to the plaintiff the unearned premium, retaining, however, the *pro rata* premium due for valid insurance to the amount of $25,000, from August 1st, 1897, to the time of cancellation.

Clearly the defendant could not assert a right to the premium for valid insurance, and at the same time insist that the insurance had never been effected. By claiming and maintaining such a right, with full knowledge of all material circumstances, it unequivocally affirmed the validity of the insurance for the period covered by the premium, and definitively waived every objection on which its validity could be denied. Although, in giving notice of cancellation, the defendant stated that the cancellation was made subject to the final adjustment of the claim by reason of the preceding fire, nevertheless the action of the defendant put an end to any possible denial of the contract as one of the elements in such adjustment.

But the defendant urges that the plaintiff is not entitled to take advantage of this waiver, because it was not pleaded.

This contention cannot be supported. The point was directly involved in the declaration setting up the written contract and the plea of non-*assumpsit*. On the issue thus presented the primary question was whether, when the suit was brought, such a contract existed, and proof of the defendant's action in November, 1897, afforded clear evidence that it did.

In *Pym* v. *Campbell,* and *Wallis* v. *Littell, ubi supra,* it was held that evidence of the condition on which the defendant had signed and delivered a writing was admissible to support a plea of non-*assumpsit,* because it showed that the defendant had not agreed, as the plaintiff alleged. It logically follows that evidence on behalf of the plaintiff, which showed that when the suit was brought the condition was, in legal contemplation, non-existent, would be admissible in direct denial of the plea. Moreover, in the present case the evidence referred to was introduced by the defendant, and therefore it should not be heard to complain of the legitimate effect.

These views dispose of all the material exceptions taken at the trial, and lead to the conclusion that the judgment should be affirmed.

*For affirmance*—DEPUE (CHIEF JUSTICE), DIXON, LUDLOW, COLLINS, KRUEGER, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH. 9.

*For reversal*—None.