THE SLOVENIAN MUTUAL BENEFIT ASSN. *v.* KNAFELJ.

(Decided May 19, 1930.)

*Mr. Leopold Kushlan,* for plaintiff in error.
*Mr. John L. Mihelich,* for defendant in error.

VICKERY, P. J.   This cause comes into this court on a petition in error to the municipal court of the city of Cleveland, and the statements of counsel and the findings of fact and law of the trial court constitute the record upon which the case was tried in this court.

In the court below defendant in error, Theresia Knafelj, as plaintiff, brought an action to recover on a certain insurance policy taken out on the life of one whom she supposed to have been her husband.

An application for a policy was made by the husband, and certain statements were made by him in the application which, under the by-laws and constitution of the organization, became a part of the policy of insurance.

The policy was taken out in 1923 and the beneficiary named in the policy was the same person who was plaintiff in the court below, but, at the time the policy was taken out, the beneficiary was designated as the cousin, and she later became the wife of the insured, as she supposed, by being married in a church in what would have been a *bona fide* marriage had it not been for something of which she knew nothing, so far as the record is concerned; and, after the marriage, the decedent of the plaintiff below, the insured, had the designation of the beneficiary changed from cousin to wife, she being one and the same person.

Subsequently the assured died and a claim was made by the beneficiary for the insurance. Proof of death was properly made, and the insurance company having refused to pay the insurance, this action was brought. In the trial court a judgment was rendered for the plaintiff, and it is to reverse that judgment that error is prosecuted here.

The grounds upon which it is hoped to reverse this judgment are misrepresentations, or rather the giving of false answers in the application for insurance, two having been called to our attention: One was that the insured, in reply to a question, answered that no one in his family had been afflicted with a mental disease, whereas, as a matter of fact, he had a wife who had become insane in 1911 and was confined in the Cleveland State Hospital for Insane at

Newburgh until 1921, and thereafter was sent to the State Insane Asylum, and is now there an inmate of such institution as one being hopelessly insane. The other misrepresentation was that he mentioned as a beneficiary in his policy the person who, as already stated, brings this suit, but at that time mentioned her as his cousin, and the record, it is claimed, shows that she was not as a matter of fact his cousin. It is argued that she was not his cousin because she afterwards became his wife. This is not at all conclusive, because "cousin" is a pretty indefinite sort of term. It is true that, under the laws of Ohio, if she were his first cousin he could not marry her; but they could go to the state of Michigan, or the state of Georgia, and perhaps many other states in the United States, and intermarry, and then come right back into Ohio and the marriage would be legal. Therefore the argument that, because he afterwards married the woman, she therefore could not be his cousin, is not at all tenable; and so far as we have heard that was the only thing that was stated in the record going to the matter of the relationship, except, I believe, the court did find, as a matter of fact, that she was not his cousin.

But, assuming that to be true, that she was not his cousin and was named as beneficiary at the time the policy was taken out, yet afterwards he married her and the policy was changed to make his wife, the same person, the beneficiary, and if she really was his wife she could well be the beneficiary. Now the court found in this case that at the time of this so-called marriage the husband, the insured, was incapable of contracting a marriage because of his former **marriage** to the insane person. But the

record shows, and the court so found, that this beneficiary who claims the benefit under this policy innocently married this man and never knew that he wasn't a single man until she sought to recover this insurance, at which time the insurance company sought to evade its responsibilities by setting up this as a defense—that she was not entitled, under the by-laws, to be a beneficiary.

Well, now, the court very properly found that for several years after she was married to this man she kept his house and took care of him, paid the funeral expenses and the doctors' bills, and did everything that a wife could do for her husband, and was entitled to his support and maintenance while she was in that relation with him, and that therefore she was dependent upon him and was entitled to be named a beneficiary, and under this clause of the by-laws of the association might be named as the beneficiary. Upon this theory the court found for the plaintiff.

As to the false answer with respect to no one in the family having a mental disease, or any other disease, that, of course, by all analogy, must refer to the insured, because if the mental disease was in the wife, or if the physical disease was in the wife, it would not necessarily make the husband less a proper risk. The purpose of the inquiry as to the family of the insured is to find what latent diseases may be in the insured. If one is related by blood, and his ancestors, his father or his mother, or his grandfather, or his grandmother, had a disease that might be inherited, transmitted from one generation to another generation, that is a matter that the insurance company would like to know, for it would bear upon the question as to whether or not the party

would be likely to be a good risk. For example, certain diseases are inheritable, and at a certain time in the life of the individual who has inherited these family traits the disease will probably develop, and the insurance company wishes to know that, as it bears upon the insurability or risk of the insured.

Now whether the wife has a mental disease or not would not at all bear upon this question. It is true that if she had tuberculosis, or some other disease that would be infectious, or contagious, or rather transmittable from coming in contact with the insured, the matter might be pertinent; but a mental disease of a wife who is not related in blood to the husband, whatever her family tree might show, does not bear upon what his family tree might show, and, in our judgment, it is stretching the meaning of words pretty far to hold that a policy of that kind, or an answer to an application of that kind, should be extended so as to include the family of the wife; and, even though this wife was insane, we do not see how that question had any relation whatever to the insured or the risk of the insured. Of course, the court found in this case that the insured did know that his wife was insane, and that she had been so for years, but that he was an ignorant man and did not comprehend the nature of the questions, and I doubt if anybody else would have thought of such a thing in insurance. It is argued that the statute which makes it necessary to void the effect of a wrong answer to a question that it be made willfully, that it be material, and was made knowingly, with the purpose of deceiving, and did deceive, as provided in the statute applying to life insurance companies, does not apply to this sort of case.

We do not think that any statement in this policy was false within the meaning of the purpose of the questions contained in the statement. We think that, so far as the cousin question is concerned, if there is any falsity about that, it does not appear, but even were it so, the transferring of the policy to the wife would obviate that difficulty; and in regard to the answer about a mental disease or disease otherwise, we think that should be construed so as to apply to the insured and to those of his blood and not to his wife or his wife's relatives. If his mother had died with consumption, it might have been very material that the insurance company know that fact. But his family might have been all right in every way, and there is nothing in this case to show but that both he and his family were all right in every way.

The record in this case shows that the wife was insane, but we do not think that that question was at all pertinent, or the answer thereto material, and we doubt whether the clause was meant to cover a case like the instant case.

Now there is another point. This man was insured. He paid his premiums for four or five years, and if the theory of the insurance company is right, the only effect of these answers would be to make the policy void *ab initio* if the answers were false, and, if false, then it would be the duty of the insurance company to declare the policy void, and, if the policy is void *ab initio,* the company had no right to hold the premiums that were paid. If their theory is correct, this policy might have gone on until the whole face of it had been paid, and then, when the time came to pay this policy, they would say it was

void; and if the theory on which they tried this lawsuit is correct, they could keep the premiums and refuse to pay. Such a theory is contrary to public policy.

This contract was either in force or void. If it was void, the insurance company before repudiating it must tender back the premiums. This they did not do. The policy was in force to what purported to be the wife of the insured. She surely was a dependent upon the husband, and it was not her fault that the marriage was bigamous because of the relation of the husband to the insane wife, who had been insane for a great many years before this marriage was contracted. We cannot help thinking, in view of the whole record, that the judgment of the court below was right.

There being no error in the record that would warrant us in disturbing the judgment, the same is affirmed.

*Judgment affirmed.*

SULLIVAN and LEVINE, JJ., concur.