Kevin **OPHEIM**, Appellee,

v.

**AMERICAN INTERINSURANCE EXCHANGE, Appellant.**

No. 87–1127.

Supreme Court of Iowa.

Oct. 19, 1988.

Rehearing Denied Nov. 18, 1988.

Alfred A. Beardmore, Charles City, for appellee.

John M. Wharton and Fred L. Morris of Peddicord & Wharton, P.C., Des Moines, for appellant.

Considered by McGIVERIN, C.J., and SCHULTZ, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

Defendant American Interinsurance Exchange (American) appeals the judgment rendered against it and in favor of plaintiff, Kevin Opheim, in this action tried to the court. American asserts the district court erred by concluding a prior declaratory judgment American obtained against its insured, Tim Allie, did not bar this action under the doctrine of issue preclusion. American also asserts the district court erred by concluding American did not meet the burden on it to prove its policy with Allie provided no coverage for his accident with Opheim. We reverse.

On December 12, 1981, Opheim sustained injury when his car collided with one driven by Allie, but owned by Lyle Moss. Opheim brought suit against Allie and obtained a judgment against him in the amount of $15,000, with interest and costs. On March 15, 1985, a general execution which directed the Hamilton County Sheriff to levy on Allie's goods and chattels in the amount of the judgment was returned unsatisfied. Opheim thereafter brought this direct action against American pursuant to Iowa Code chapter 516 (1985).

On April 25, 1984, however, before Opheim obtained his judgment against Allie, American obtained a declaratory judgment against Allie that held there was no coverage for the accident under Allie's policy with American. Opheim was not made a party to the declaratory action. Nonetheless, American contended in its motion for summary judgment in the present action that Opheim was precluded by the declaratory judgment from litigating the issue of American's liability under its policy issued to Allie. The district court overruled the motion and thereafter granted Opheim judgment in the amount of $15,-131.40, with interest and costs. This appeal followed.

At the time of the accident, Allie was cohabiting with Ellen Moss, who had become separated from her husband, Lyle Moss, approximately four to six weeks earlier. The automobile involved in the accident, a 1970 Chevrolet, had been taken by Ellen at the time of the separation. In the declaratory judgment action, American sought to prove Allie was disqualified from coverage provided under his policy because he was not driving a "temporary substitute automobile" and was not an insured driving a "non-owned automobile." A "temporary substitute automobile" was defined as one "not owned by the named insured, while temporarily used *with the permission of the owner* as a substitute for the owned automobile.... when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." (Emphasis added.) Persons insured with respect to a "non-owned automobile" included the named insured (Allie), "provided his actual operation.... [was] *with the permission or reasonably believed to be with the permission, of the owner* and [was] within the scope of such permission." (Emphasis added.) The sole issue in the declaratory action was whether Allie had, or reasonably believed he had, Lyle Moss's permission to operate his automobile. Lyle Moss testified he had allowed Ellen to take the car for her driving needs, although it was owned solely by him, upon the express provision that she allow no other persons to drive it. Ellen Moss testified she was not certain whether she had expressly informed Allie that Lyle was the sole owner of the car, but she thought he knew of the fact. Allie's testimony was apparently ambivalent. He first testified he was not aware of Lyle's ownership of the car. He later stated Ellen had told him he had Lyle's permission to use the car. The declaratory judgment court, having perceived inconsistencies in Allie's testimony and ac-

rimony between him and Lyle Moss, found Allie did not have, or reasonably believed he had, Lyle's permission to use the vehicle. The court therefore determined there was no coverage under the policy.

Before the doctrine of issue preclusion may be applied in any given case, four prerequisites must be established:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). Additionally, for the doctrine to be applied defensively as between nonmutual parties, the party against whom it is invoked must have been "so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution." *Aid Ins. Co. (Mut.) v. Chrest*, 336 N.W.2d 437, 439 (Iowa 1983); see *also Bertran v. Glens Falls Ins. Co.*, 232 N.W.2d 527, 533 (Iowa 1975). Ordinarily the phrase "defensive use" of issue preclusion is used to mean the reliance upon a former judgment, by a stranger to that judgment who is a defendant in the second action, as conclusively establishing in his favor an issue which he must prove as an element of his defense. *Hunter*, 300 N.W.2d at 123 (quoting *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971)). In this case, of course, the doctrine is being invoked defensively against the stranger to the former judgment. However, it is still being used defensively as a "shield." *Id.*

The parties do not dispute the four prerequisites for issue preclusion have been established in this case. They do dispute whether Opheim, as the injured person, was so connected in interest with Allie, the insured, in the declaratory action as to have had a full and fair opportunity to litigate American's liability under its policy issued to Allie.

American correctly notes Opheim's rights under Allie's policy are measured and limited by Allie's rights. *See, e.g., Chrest*, 336 N.W.2d at 440. However, our direct action statute, Iowa Code chapter 516 (1985), gives the injured person at the time of injury an interest in the policy adverse to both the insurer and the insured. *Farm & City Ins. Co. v. Coover*, 225 N.W.2d 335, 337 (Iowa 1975). Thus, the insurer and insured may not "do anything by litigation or agreement between them alone to abrogate or compromise coverage existing at the time of the accident." *Id.* Nor would a settlement between the insurer and insured bar the injured person's direct action unless made with his consent. Iowa Code § 516.2 (1985); *Chrest*, 336 N.W.2d at 440.

The application of these principles in *Chrest* resulted in the injured person being allowed to litigate the applicability of a policy exclusion regarding intentional injury despite the insured's earlier plea of guilty, as a result of the incident, to the charge of assault with intent to commit murder. *Chrest*, 336 N.W.2d at 440–41. American contends *Chrest* is distinguishable from this case in that *Chrest* involved an action, the guilty plea, by the insured which was taken after the injury, whereas in this case there was no later action by the insurer or insured. We do not agree *Chrest* should be read this narrowly. The animating principle in *Chrest* was that although the injured person's rights in the policy were no different from the insured's, the injured person's rights could not be defeated on the same basis as the insured's. *Id.* at 440. The mere fact Opheim's rights may not rise above Allie's rights does not mean, ipso facto, the declaratory judgment against Allie is also binding on Opheim. *See Shapiro v. Republic Indem. Co.*, 52 Cal.2d 437, 438, 341 P.2d 289, 290 (1959).

The appropriate focus is not on the equivalence of the rights of the insured and injured person, but on whether the interest of the insured in the declaratory action was

sufficiently connected to the interest of the injured person regarding the issue sought to be precluded. Thus, the timing of the insured's guilty plea in *Chrest* was not significant. *Chrest* is distinguishable from this case because the interests of the insured and injured person regarding the effect of the guilty plea were not sufficiently connected—the insured being interested in minimizing his potential period of incarceration and the injured person being interested in securing policy coverage.

In the present case, Opheim and Allie shared an interest in securing coverage under Allie's policy with American. Although we can envision cases in which the intensity of the insured's interest in securing coverage is insufficient to say he has adequately represented the injured person's similar interest as well as his own, this is not such a case. The record reflects Allie presented a vigorous defense to American's declaratory action. He engaged legal counsel to prepare his case. His testimony regarding the circumstances surrounding the operation of Moss's car fully litigated the issue of whether the words of the policy provided coverage. The interest of Allie and Opheim in securing this coverage is identical. In that regard, we do not believe Opheim could have litigated this issue in a manner materially different from that employed by Allie.

The district court in the present case found that American could have joined Opheim in the declaratory judgment action. When it failed to do so, the court reasoned that, issue preclusion should not apply because if it did apply, Opheim is deprived of his right to litigate the issue in his direct action against American under section 516.-1. The court also reasoned that barring a relitigation of the coverage issue would reward American for failing to join Opheim in the declaratory judgment action.

■ We are aware a number of other courts have held an insurer's declaratory judgment against solely the insured is never binding on the injured person. *E.g., Harris v. Quinones,* 507 F.2d 533, 537 (10th Cir.1974); *Spiker v. Capitol Milk Producers Coop,* 577 F.Supp. 416, 419 (W.D.Va.1983); *Southern Farm Bureau Casualty Ins. Co. v. Robinson,* 236 Ark 268, 271, 365 S.W.2d 454, 457 (1963); *Shapiro,* 52 Cal.2d at 440, 341 P.2d at 291; *Davis v. National Indem. Co.,* 135 Ga.App. 793, 794–96, 219 S.E.2d 32, 33–34 (1975); *Pharr v. Canal Ins. Co.,* 233 S.C. 266, 104 S.E.2d 394, 398–99 (1958); *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 774 (Tex.1983); *Glandon v. Searle,* 68 Wash.2d 199, 412 P.2d 116, 118 (1966). *But see Wilcox v. Sealey,* 132 Mich.App. 38, 346 N.W.2d 889, 894 (1984) (doctrine of collateral estoppel applied to prevent plaintiffs from retrying issue of policy coverage where plaintiffs had actual notice the coverage issue was being litigated and could easily have intervened). However, many of these cases involved declaratory judgment acts which differed from our rules governing declaratory actions by providing that "no declaration shall prejudice the rights of persons not parties to the proceeding." *E.g., Davis,* 135 Ga.App. at 793, 219 S.E.2d at 33; *Pharr,* 104 S.E.2d at 398; *Dairyland,* 650 S.W.2d at 774. Our rules contain no such proscription on the application of issue preclusion. *See* Iowa R.Civ.P. 261–69. Other cases have stated or implied all persons interested in the declaration are *necessary,* and not just *proper,* parties. *E.g., Harris,* 507 F.2d at 537; *Glandon,* 412 P.2d at 118. Under our cases, injured persons are proper parties, *Coover,* 225 N.W.2d at 336, but we have never held they are necessary parties.

In our view, where the four prerequisites of issue preclusion enumerated in *Hunter* have been established, and the nonmutual party against whom the doctrine is defensively invoked has a "community of interest with, and adequate representation by, the losing party in the first action," the nonmutual party has had a full and fair opportunity to litigate the issue and is properly bound by its resolution in the former action. *See Clemmer v. Hartford Ins. Co.,* 22 Cal.3d, 865 151 Cal.Rptr. 285, 289, 587 P.2d 1098, 1102 (1978); *see also Bryan v. Hall,* 367 N.W.2d 251, 255 (Iowa App. 1985). We conclude these requirements were all satisfied in this case. The district

court erred by denying American's motion for summary judgment.

REVERSED.

All justices concur except SCHULTZ, J., who dissents.

SCHULTZ, Justice (dissenting).

I believe that it is improper to apply the doctrine of issue preclusion to the facts of this case. Allie and Opheim are involved in their own litigation. Allie may not have had the desire or financial resources to properly resist his insurance company's suit or to appeal the judgment. The appellant had the option of joining Opheim in the declaratory judgment action, thereby preventing this problem and further litigation. The majority opinion rewards appellant for its choice not to do so. I would not.